UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
HAROLD CHIZMAN,

                        Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                            14-CV-5910 (JS)(AKT)

            - against -

MICHAEL SCARNATI and ROBERT KAROLKOWSKI,
individually and in their official
capacities,

                        Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:      Matthew Ian Marks, Esq.
                    Ricotta & Marks P.C.
                    31-10 37th Avenue, Suite 401
                    Long Island City, NY 11101

For Defendants:     Caroline Beth Lineen, Esq.
                    Lewis R. Silverman, Esq.
                    Silverman & Associates
                    445 Hamilton Avenue, Suite 1102
                    White Plains, New York 10601

SEYBERT, District Judge:

        Plaintiff Harold Chizman ("Plaintiff") commenced this

action against defendants Michael Scarnati ("Scarnati") and Robert

Karolkowski ("Karolkowski" and, collectively, "Defendants")

alleging violations of the Equal Protection Clause of the

Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  Presently

pending before the Court is Defendants' motion for summary

judgment.  (Defs.' Mot., Docket Entry 47.)  For the following

reasons, Defendants' motion is GRANTED.

I.    Factual Background[1]

        Plaintiff was born in 1950.  (Defs.' 56.1 Stmt., Docket

Entry 48, ¶ 1.)  In or about December 1991, Plaintiff was hired by

the Nassau Board of Cooperative Educational Services ("BOCES") as

a Head Custodian I.  (Defs.' 56.1 Stmt. ¶ 2.)  A Head Custodian I

is a supervisor whose responsibilities include, but are not limited

to:

> [S]upervision of custodial and maintenance
> staff, HVAC, lighting, security systems,
> building safety, building cleanliness,
> ordering custodial supplies and oil, help with
> manual maintenance and custodial tasks that
> come up, light maintenance, necessary repairs,
> cleaning the grounds, preventative
> maintenance on boilers and air conditioners,
> dusting of hallways, cleaning windows, snow
> removal, all areas of plumbing, electrical,
> any necessary services to the staff of the
> building, use of ladders to perform duties,
> and walking around the assigned building.

(Defs.' 56.1 Stmt. ¶ 4.)  Plaintiff alleges that a Head Custodian I

generally assists his staff with "assigned tasks."  (Pl.s' 56.1

Counterstmt., Docket Entry 56, ¶ 4.)

        Scarnati is fifty-seven years old and began working for

BOCES in or about 1999.  (Defs.' 56.1 Stmt. ¶¶ 6, 69.)  Scarnati

---

[1] The following material facts are drawn from Defendants' Local
Civil Rule 56.1 Statement, Plaintiff's Local Civil Rule 56.1
Counterstatement, and Plaintiff's Affidavit sworn to on January
12, 2016 ("Pl.'s Aff.," Docket Entry 57).  Any relevant factual
disputes are noted.  All internal quotation marks and citations
have been omitted.

was initially the Supervisor of Operations for the night shift. In or about 2003 or 2005, Scarnati became Supervisor of Operations for the day shift. (Defs.' 56.1 Stmt. ¶ 8.) Scarnati is responsible for "manag[ing] the entire custodial staff, the night supervisor of operations, the grounds crew, and the warehouse crew." (Defs.' 56.1 Stmt. ¶ 9.) Scarnati evaluated Plaintiff's performance as Supervisor of Operations for the day shift and "gave [Plaintiff] satisfactory ratings." (Defs.' 56.1 Stmt. ¶¶ 12-13.) Scarnati serves as Karolkowski's direct supervisor. (Defs.' 56.1 Stmt. ¶ 21.)

Karolkowski is sixty-six years old and began working at BOCES in or about 1998. (Defs.' 56.1 Counterstmt. ¶¶ 15, 73). Karolkowski has been the Supervisor of Night Custodial since in or about 2003. (Defs.' 56.1 Stmt. ¶¶ 14.) Karolkowski is responsible for ensuring that the night custodial staff is "working according to procedure." (Defs.' 56.1 Stmt. ¶ 16.) Karolkowski "informally write[s]-up subordinate employees," but does not complete performance evaluations. (Defs.' 56.1 Stmt. ¶¶ 17, 20.)

Plaintiff suffers from blood clots and Chronic Obstructive Pulmonary Disease ("COPD"), which causes "significant difficulty breathing, using stairs, and using ladders." (Defs.' 56.1 Stmt. ¶¶ 22-23.) Plaintiff alleges that his COPD makes it difficult for him to walk and climb stairs after the sixth stair. (Pl.'s 56.1 Counterstmt. ¶ 22.) Plaintiff also suffers from

hypertension. (Pl.'s 56.1 Counterstmt. ¶ 25.) The parties dispute whether Plaintiff advised BOCES personnel about his health issues and Plaintiff alleges that Scarnati and Karolkowski observed Plaintiff's difficulties breathing, climbing stairs, and using ladders. (Defs.' 56.1 Stmt. ¶¶ 24, 26; Pl.'s 56.1 Counterstmt. ¶¶ 24, 26.)

A. Assignment to Lipinski

In or about 2009, Plaintiff was assigned the Head Custodian position at the Lipinski Center ("Lipinski"). (Defs.' 56.1 Stmt. ¶ 27.) Lipinski is a one-story building with certain split-level areas that are accessed by one flight of stairs. (Defs.' 56.1 Stmt. ¶ 30.) Plaintiff alleges that the flights of stairs in Lipinski are six or seven steps. (Pl.'s 56.1 Counterstmt. ¶ 30.) Additionally, Lipinski utilizes Building Management System ("BMS") technology. (Defs.' 56.1 Stmt. ¶ 29.) Plaintiff received two formal trainings regarding BMS. (Defs.' 56.1 Stmt. ¶ 29.)

Managers at Lipinski complained to Scarnati that Plaintiff "did not have areas ready for meetings, and about his inability to interact with some staff." (Defs.' 56.1 Stmt. ¶ 32.) Plaintiff disputes the veracity of the substance of these complaints. (Pl.'s 56.1 Counterstmt. ¶ 32.) Scarnati discussed these complaints with Plaintiff; however, Plaintiff was not formally disciplined. (Defs.' 56.1 Stmt. ¶¶ 33-34.)

B.    Transfer to Seaman

On January 18, 2013, Scarnati advised Plaintiff that he
was being transferred to the Seaman Neck School ("Seaman")
effective February 4, 2013.   (Defs.' 56.1 Stmt. ¶¶ 35-36.)
Director of Facilities Tony Fierro, along with Scarnati, and
Karolkowski collaboratively made the decision to transfer
Plaintiff.  (Defs.' 56.1 Stmt. ¶¶ 10, 37.)  Plaintiff had been
transferred on four previous occasions during his tenure at BOCES.
(Defs.' 56.1 Stmt. ¶ 68; Pl.'s 56.1 Counterstmt. ¶ 68.)   On
February 4, 2013 Sean McQuade, who was forty-nine years old, was
transferred to Lipinski.  (Defs.' 56.1 Stmt. ¶¶ 45, 86.)

Defendants allege that Plaintiff was transferred to
Seamen because of his difficulty with the BMS system and "problems"
with the Lipinski administration.   (Defs.' 56.1 Stmt. ¶ 38.)
Plaintiff disputes that explanation and alleges that "Scarnati
told Plaintiff, with respect to the transfer [ ] 'You know what
this is about,' and shortly thereafter, during the same meeting
. . . made reference to Plaintiff being at the end of his career."
(Pl.'s 56.1 Counter stmt. ¶ 38.)  Additionally, Plaintiff alleges
that: (1) he did not have difficulties using BMS, and (2) Scarnati
assigned Plaintiff a second in command who was not allowed to
shovel snow due to his heart issues.  (Pl.'s 56.1 Counterstmt.
¶ 38.)

Seaman is a two-floor building with approximately three flights of stairs to access the second floor in a certain area of the building, as well as a boiler room below the first floor. (Defs.' 56.1 Stmt. ¶ 39.) Plaintiff alleges that Seaman's subbasement renders it a four story building and asserts that his office area at Seaman did not have air conditioning. (Pl.'s 56.1 Counterstmt. ¶ 39.) Plaintiff did not complain about his transfer, and did not advise Defendants that he could not physically handle the transfer. (Defs.' 56.1 Stmt. ¶¶ 40-42.)

On February 3, 2013, Scarnati directed Plaintiff to perform snow removal at Seaman. (Defs.' 56.1 Stmt. ¶ 46.) Plaintiff alleges that he told Scarnati that he did not believe he was "physically safe" to shovel snow and Scarnati replied that it was part of his job. (Pl.'s 56.1 Counterstmt. ¶ 46.) The parties do not dispute that snow removal is within the Head Custodian's job description, but Plaintiff alleges that prior to his transfer "he would supervise or help a little." (Pl.'s 56.1 Counterstmt. ¶ 47.) Plaintiff alleges that he called staff for assistance with the snow removal, but the only employee available had seven stents and was not supposed to shovel snow. (Pl.'s 56.1 Counterstmt. ¶ 48.) Plaintiff further alleges that when he was transferred to Seaman, "only two (2) custodial staff were allowed to come to a particular building in order to clear snow." (Pl.'s Aff. ¶ 5.) Plaintiff removed snow for approximately three and one half hours

and had to use his inhaler when he had difficulty breathing. (Defs.' 56.1 Stmt. ¶¶ 50-51.)

The next day, Plaintiff reported to work at Seaman. (Defs.' 56.1 Stmt. ¶ 54.) That afternoon, Plaintiff began experiencing chest, jaw, and shoulder pain and believed he was having a heart attack. (Defs.' 56.1 Stmt. ¶ 55.) Plaintiff left work at approximately 3:00 p.m. and did not seek medical treatment but "called out sick from work for the next two days." (Defs.' 56.1 Stmt. ¶¶ 56-58.)

On February 7, 2013, Plaintiff reported to work and advised Karolkowski and Fierro that he was suffering from chest pains. (Defs.' 56.1 Stmt. ¶ 59.) Karolkowski advised that Plaintiff could not return to work and needed to go to Human Resources. (Defs.' 56.1 Stmt. ¶ 59.) Plaintiff alleges that Karolkowski was smiling when he made this remark and "had an extremely pleased look on his face, which made his comments seem like a threat." (Pl.'s 56.1 Counterstmt. ¶ 59.) Plaintiff further alleges that Karolkowski stated that Plaintiff would need to "make some hard decisions." (Pl.'s 56.1 Counterstmt. ¶ 59.) Plaintiff went home early and did not attempt to contact Human Resources. (Defs.' 56.1 Stmt. ¶¶ 60-61.)

Plaintiff went to the emergency room the next Monday and was diagnosed with Cardiomyopathy, anxiety, and Panic Disorder. (Defs.' 56.1 Stmt. ¶¶ 62-63.) Plaintiff did not return to work

and utilized sick time and Family and Medical Leave Act ("FMLA") time. (Defs.' 56.1 Stmt. ¶¶ 64-65.) Plaintiff submitted a resignation letter prior to the expiration of his FMLA leave and his retirement became effective May 1, 2013. (Defs.' 56.1 Stmt. ¶ 67.)

From 2008 to the present, all of BOCES' Head Custodians have been over forty-years old, with most active Head Custodians being fifty years old or older. (Defs.' 56.1 Stmt. ¶ 85.) Plaintiff alleges that when he resigned, he was the oldest Head Custodian by approximately five years. (Pl.'s 56.1 Counterstmt. ¶ 85.) Defendants allege that they were not aware of Plaintiff's age. (Defs.' 56.1 Stmt. ¶ 70.) Plaintiff disputes that allegation and asserts that: (1) on a number of occasions, Scarnati told him "it sucks getting old," and asked "[w]hat the fuck are you still doing here?" and "what do you expect, to die on the job?" and (2) Karolkowski asked Plaintiff if he "planned on dying on the job" approximately five to ten times. (Pl.'s 56.1 Counterstmt. ¶¶ 70, 75.) The parties do not dispute that Plaintiff did not discuss any unfair treatment or discrimination with Scarnati, and Plaintiff did not complain to Karolkowski that he was treated poorly or discriminated against based on his age. (Defs.' 56.1 Stmt. ¶¶ 72, 78.)

Plaintiff alleges that prior to his transfer to Seaman, he complained to the Director of Facilities about Defendants'

"mistreatment," and also called the head of Human Resources and "left a message with his secretary about the discrimination he was being subjected to by Scarnati and Karolkowski." (Pl.'s 56.1 Counterstmt. ¶ 61.) However, Plaintiff also does not dispute that he "never complained to anyone at BOCES about the alleged comments by Scarnati and Karolkowski," and he did not file an internal complaint with BOCES. (Pl.'s 56.1 Counterstmt. ¶¶ 79-80.)

## II. Procedural History

On October 8, 2014, Plaintiff commenced this action asserting claims against Scarnati, Karolkowski, and BOCES pursuant to Section 1983 and alleging that he was subjected to a hostile work environment and discriminated against based on age and disability. On January 15, 2015, Defendants moved to dismiss the Complaint. (Docket Entry 14.) The Court's Memorandum and Order dated August 20, 2015 (the "Order") dismissed Plaintiff's claims for age discrimination, disability discrimination, and hostile work environment based on disability. (Order, Docket Entry 33, at 9-19.) Plaintiff's claims against BOCES were dismissed based on his failure to plead municipal liability. (Order at 20-21.) Plaintiff's remaining claim was hostile work environment based on age against Defendants in their individual capacities. (Order at 22.)

On June 3, 2016, Defendants filed their motion for summary judgment. (See Defs.' Mot.) Defendants argue: (1)

Plaintiff cannot establish an Equal Protection claim based on age, as public employees may not assert "class of one" or selective enforcement claims and Plaintiff has not alleged that he was treated differently than similarly situated BOCES employees; and (2) the record does not demonstrate that Plaintiff was subjected to a hostile work environment. (Defs.' Br., Docket Entry 50, at 6-13.) Plaintiff counters that he is not asserting a "class of one theory" and instead argues that "it is well settled that plaintiffs can bring an equal protection claim based on age discrimination while alleging a distinct violation of a constitutional right." (Pl.'s Br., Docket Entry 55, at 9-10.) Plaintiff avers that Defendants' "numerous ageist comments" and his transfer from Lipinksi to Seaman establish a hostile work environment. (Pl.'s Br. at 12-15.)

## DISCUSSION

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed 2d 202 (1986). In determining whether an award of summary judgment is appropriate, the Court considers the pleadings, deposition testimony,

interrogatory responses, and admissions on file, together with other firsthand information that includes but is not limited to affidavits. <u>Nnebe v. Daus</u>, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there are no genuine issues of material fact. <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." <u>Giglio v. Buonnadonna Shoprite LLC</u>, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. <u>Id.</u> However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" <u>Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc.</u>, No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997)).

I.   <u>Plaintiff's Legal Theory</u>

Where the plaintiff does not allege he is a member of a protected class, his Equal Protection claim may only be based on two theories: selective enforcement or "class of one." <u>Airday v. City of N.Y.</u>, 131 F. Supp. 3d 174, 184 (S.D.N.Y. 2015). "Age is not a protected class under the Fourteenth Amendment's Equal

Protection Clause." Shein v. N.Y. City Dep't of Educ., No. 15-CV-4236, 2016 WL 676458, at *6 (S.D.N.Y. Feb. 18, 2016). Additionally, public employees are foreclosed from utilizing a "class of one" theory. Engquist v. Or. Dep't of Agric., 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008). See also Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008). It follows that Plaintiff's age-based Equal Protection claim must be based on a selective enforcement theory.

To establish an Equal Protection claim based on selective enforcement, the plaintiff must demonstrate:

> (1) [the plaintiff], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff.

Mancuso v. Village of Pelham, No. 15-CV-7895, 2016 WL 5660273, at *13 (S.D.N.Y. Sept. 29, 2016) (internal quotation marks and citation omitted). The Second Circuit has not yet determined whether Engquist also precludes public employees from asserting Equal Protection claims based on selective enforcement. Emmerling v. Town of Richmond, 434 F. App'x 10, 12 (2d Cir. 2011). See also Mancuso, 2016 WL 5660273, at *14 n.16 ("[t]he Second Circuit has recognized that there is a question as to whether selective

enforcement claims in the public employment context survived Engquist, but it has not yet decided the issue").

However, this Court need not determine whether Engquist precludes Plaintiff's claim to the extent it is based on a selective enforcement theory, as Plaintiff has failed to establish--or even allege--that he was treated differently than similarly situated Head Custodians. Airday, 131 F. Supp. 3d at 184 ("Both selective enforcement and class of one theories require a showing that Plaintiff was treated differently from other similarly-situated individuals."). See Epstein v. Cty. of Suffolk, No. 14-CV-0937, 2015 WL 5038344, at *10 (E.D.N.Y. Aug. 26, 2015) (dismissing the public employee's age-based Equal Protection claims for discrimination, hostile work environment, and retaliation based on his failure to plead selective enforcement).

Plaintiff effectively concedes that he has not proffered evidence of similarly situated individuals by arguing that he is not asserting a claim based on a "class of one" or selective enforcement theory "but rather that he suffered discrimination because of his age." (Pl.'s Br. at 10-11.) Parenthetically, Plaintiff's citation to a number of cases for the proposition that "plaintiffs can bring an equal protection claim based on age discrimination while alleging a distinct violation of a constitutional right," (Pl.'s Br. at 10), has no relevance to the legal theory underlying his claim.

Further, Plaintiff's reliance on _Volpi v. Center_
_Moriches Union Free School District_, 9 F. Supp. 3d 255 (E.D.N.Y.
2014), is also misplaced.  In determining the defendant's motion
to dismiss, the _Volpi_ Court rejected the argument that the public
employee's age-based Equal Protection claim should be treated as
a "class of one" claim because age is not a suspect class.  _Id._ at
258.  However, the _Volpi_ Court did not expressly address whether
the plaintiff was required to utilize a selective enforcement
theory as a public employee asserting a claim based on her
membership in a non-suspect class.  Parenthetically, the _Volpi_
Court did note that the plaintiff alleged that she was treated
differently than her younger colleagues.  _Id._ at 257-58.  In any
event, to the extent _Volpi_ can be construed as tacitly permitting
the plaintiff to assert an age-based Equal Protection Claim without
pleading a selective enforcement theory, this Court respectfully
declines to follow that authority.

II.  _Merits_

Notwithstanding the absence of any evidence regarding
similarly-situated individuals, the Court finds that there are no
genuine issues of material fact as to the merits of Plaintiff's
hostile work environment claim.

Section 1983 claims are analyzed under the same
standards as Age Discrimination in Employment Act ("ADEA") claims.
_Pocino v. Culkin_, No. 09-CV-3447, 2010 WL 3516219, at *4 (E.D.N.Y.

Aug. 31, 2010). The plaintiff establishes a hostile work environment claim under the ADEA and Section 1983 where he demonstrates that the defendant's conduct: "(1) is objectively severe or pervasive--that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race, national origin, or age]." Sotomayor v. City of N.Y., 862 F. Supp. 2d 226, 260 (E.D.N.Y. May 24, 2012), aff'd, 713 F.3d 163 (2d Cir. 2013) (internal quotation marks and citation omitted; alteration in original).

In determining a hostile work environment claim, "[c]ourts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Palumbo v. Carefusion 2200, Inc., No. 12-CV-6282, 2014 WL 3921233, at *14 (W.D.N.Y. Aug. 11, 2014) (internal quotation marks and citation omitted). Relevant factors include: "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Dressler v. N.Y. City Dep't of Educ., No. 10-CV-3769, 2012 WL 1038600, at *13 (S.D.N.Y. Mar. 29, 2012) (quoting Harris v. Forklift Sys., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). Generally, the conduct at issue "must be

sufficiently continuous and concerted to be deemed pervasive."
Todoverto v. McDonald, No. 13-CV-4922, 2016 WL 3826281, at *12
(S.D.N.Y. Jul. 7, 2016) (internal quotation marks and citation
omitted).  See also Moore v. Verizon, No. 13-CV-6467, 2016 WL
825001, at *13 (S.D.N.Y. Feb. 5, 2016) ("[i]solated comments
regarding a person's age, even in combination with allegations of
rudeness and monitoring, do not rise to the level necessary to
establish a hostile work environment due to age under the federal
and state law").

Plaintiff's hostile work environment claim is primarily
based on Defendants' age-related comments.  Particularly,
Plaintiff testified that Scarnati said "it sucks getting old" ten
to fifteen times, (Pl.'s Dep. Tr., Docket Entry 49-3 to 49-4,
103:8-14, 105:19-24), "what the fuck are you still doing here,"
between five and ten times, (Pl.'s Dep. Tr. 122:13-20), and "what
do you expect, to die on the job?" less than five times (Pl.'s
Dep. Tr. 126:13-19); and Karolkowski asked if he "planned on dying
on the job" between five and ten times, (Pl.'s Dep. Tr. 124:15-
125:3).

The time frame during which these comments were made is
not entirely clear.  The Complaint alleges that in 2005, Scarnati
said "it sucks getting old" to Plaintiff, (Compl. ¶ 13), and
Plaintiff's deposition testimony does not provide a precise time
frame for the allegedly ten to fifteen times Scarnati made that

statement.  The Complaint also alleges that Scarnati's derogatory comments began in approximately August 2011 and continued until Plaintiff retired in February 2013, and Karolkowski's comments began "in or about late 2011."  (Compl. ¶¶ 14-18.)  Plaintiff testified that Scarnati said "what the fuck are you still doing here" and Karolkowski asked Plaintiff if he "planned on dying on the job," prior to his twentieth anniversary at BOCES in December 2011 with these remarks continuing "right up until [plaintiff] turned 62," (Pl.'s Dep. Tr. 123:19-124:4).  Accordingly, it appears the bulk of Defendants' remarks took place over an approximately eighteen-month time period from August 2011 through February 2013.

The Court is mindful of the number of comments allegedly made by Defendants.  However, Scarnati's comment that "it sucks getting old," is relatively mild.  The remaining remarks, while derogatory and inappropriate, fall closer to the category of "offensive utterance[s]" rather than "physically threatening or humiliating" statements.  Paul v. Postgraduate Ctr. for Mental Health, 97 F. Supp. 141, 172 (EDNY 2015).  See also Todoverto, 2016 WL 3826281, at *13-14 (granting summary judgment to the defendant on the plaintiffs' hostile work environment claim where the supervisor, inter alia, called older nurses "seasoned" every day for approximately two months and "talked about getting rid of the 'old' nurses 'every couple of months'"); Palumbo, 2014 WL 3921233, at *15 (holding that the co-worker's conduct in referring

17

to the plaintiff as an "old fart" and "old lady," telling her she smelled, and asking when she would "get a wheelchair," during six meetings over the course of four years did not support a hostile work environment); Aiello v. Stamford Hosp., No. 09-CV-1161, 2011 WL 3439459, at *26 (D. Conn. Aug. 8, 2011), aff'd, 487 F. App'x 677 (2d Cir. 2012) ("[a] handful of offensive drawings and pictures over a period of years and the fact that one coworker frequently called [the plaintiff] 'Old Man' is not severe or pervasive conduct that a reasonable person would find hostile or abusive"). Cf. Geller v. N. Shore Long Island Jewish Health Sys., No. 10-CV-0170, 2013 WL 5348313, at *7-8 (E.D.N.Y. Sept. 23, 2013) (granting summary judgment in favor of the defendant on the Title VII hostile work environment claim where over a five-year period, the coworker drew a picture of a penis on a whiteboard, inappropriately touched the plaintiff's knee, and made approximately twenty remarks that included comments about the plaintiff's breasts).

Moreover, "where the plaintiff and the individual whose conduct is at issue are members of the same protected class, the inference that the conduct constitutes harassment or discrimination is weakened." Waters v. Gen. Bd. of Global Ministries, 769 F. Supp. 2d 545, 554 (S.D.N.Y. 2011). While, as set forth above, age is not a protected class for Equal Protection Clause purposes, the Court finds that the fact that Defendants are well within the same age group as Plaintiff warrants consideration.

18

In 2011, when Defendants allegedly began making the subject remarks, Plaintiff was sixty-one years old, Scarnati was approximately fifty-three years old, and Karolkowski was approximately sixty-two years old. (Defs.' 56.1 Stmt. ¶¶ 1, 69, 73). See Waters, 769 F. Supp. 2d at 554 (considering the fact that the supervisor was "at least 50 years old" in connection with the plaintiff's ADEA hostile work environment claim).

Plaintiff also attempts to support his claim with a series of incidents that do not overtly implicate his age. Plaintiff points to his allegations that: (1) "Defendants observed [Plaintiff] struggling on a ladder [and] either laughed at him, made fun of him or threatened to discipline him," (2) Defendants assigned "problem employees" to Plaintiff and failed to resolve his complaints, (3) Karolkowski made Plaintiff and his staff complete half of the night crew's work, (4) Plaintiff was transferred to Seaman, which was a more physically challenging assignment, and (5) Scarnati directed Plaintiff to remove snow at Seaman with limited assistance. (Pl.'s Br. at 13-14.) However, as set forth below, Plaintiff has failed to demonstrate that these incidents took place because of his age.

Plaintiff testified at his deposition that Defendants saw him struggling on ladders beginning "at least eight years ago," (Pl.'s Dep. Tr. 66:8-67:2), which renders these incidents temporally removed--at least to some extent--from the age-related

comments that began in 2011.  Plaintiff also testified that when Scarnati observed him struggling with the ladder, he made "cracks about [Plaintiff's] weight or [Plaintiff's] wheezing . . . something along the lines of, Fat.  You are getting old," (Pl.'s Dep. Tr. 67:15-68:13), and when Karolkowski saw him struggling he stated, "[i]f you can't do your job, I will write you up." (Pl.'s Dep. Tr. 68:20-69:8.)  However, with the exception of Scarnati's alleged comment "[y]ou are getting old," these remarks, while unpleasant, do not relate to Plaintiff's age.

With respect to the "problem employees," Plaintiff testified that Defendants began assigning and transferring these employees "[w]ithin a few months of the opening of the Lipinski building." (Pl.'s Dep. Tr. 106:12-19.)  As Plaintiff began working at Lipinski in 2009, (Defs.' 56.1 Stmt. ¶ 27), these assignments are also--to some extent--temporally removed from any age-related comments.  Moreover, as noted by Defendants, one of the alleged problem employees, Jose, was also assigned to other buildings. (Defs.' Reply Br., Docket Entry 58, at 4; Pl.'s Dep. Tr. 106:22-107:18.)  Additionally, another of the "problem employees, Sal Toreno, had been assigned to almost all of the other Head Custodians at one time and was ultimately transferred from Plaintiff's building to another building. (Pl.'s Dep. Tr. 113:21-114:3; 114:23-115:15.)  While Plaintiff testified that Defendants failed to address his complaints about the "problem employees," he

does not allege that Defendants made any age-related comments during these conversations. (Pl.'s Dep. Tr. 109:20-111:15.)

Further, Plaintiff's complaints regarding his assignment of night shift work predate the age-related comments and were ultimately resolved. Plaintiff testified that Karolkowski instructed Plaintiff's day crew to perform half of the night crew's work and "for the first year," his building was not assigned a floating employee. (Pl.'s Dep. Tr. 112:4-10.) However, after Plaintiff formally complained, his crew was assigned a "floater." (Pl.'s Dep. Tr. 112:10-13.) Plaintiff alleges that Karolkowski subsequently indicated that Plaintiff had to do half of the work that the "floater" was supposed to complete. (Pl.'s Dep. Tr. 112:14-23.) However, he also testified that he "complained about this. And it took almost [a] year and a half before I put a stop to it." (Pl.'s Dep. Tr. 112:24-113:2.)

The Court is also not persuaded that Plaintiff's transfer to Seaman was based on his age. The Court acknowledges that Plaintiff's replacement at Lipinski was forty-nine years old and approximately thirteen years younger than him. (Pl.'s 56.1 Counterstmt. ¶ 86). However, Plaintiff had previously been transferred four times while at BOCES. (Pl.'s 56.1 Counterstmt. ¶ 68.) Plaintiff also testified that his transfer took place in conjunction with other employees' transfers. (Pl.'s Dep. Tr. 142:11-21 ("[Scarnati] said that, Okay. Anthony is being moved to

one building.  There is going to be a lot of changes.  Ian is being moved to another.  Shaun is going to Lipinski.  [Plaintiff] is going to Seaman Neck.").)  Moreover, while Plaintiff alleges that during the meeting about these transfers, Scarnati looked directly at Plaintiff and stated, "there are those that are at the end of their careers," Plaintiff testified that Scarnati did not identify him by name. (Pl.'s Dep. Tr. 142:22-143:8.)  Similarly, Scarnati's statement, "you know what this is about"--which he made during his private meeting with Plaintiff regarding the transfer--is too vague for a reasonable juror to conclude that the transfer was based on age.  (Pl.'s Dep. Tr. 137:16-25.)

To the extent Plaintiff alleges that Seaman was a more physically challenging assignment for him due to the additional stairs and lack of air conditioning in his office, (Pl.'s Br. at 13), Plaintiff testified that he did not advise any BOCES personnel that he had difficulty climbing stairs or needed air conditioning in his office.  (Pl.'s Dep. Tr. 153:7-154:19.)  Plaintiff alleges that Scarnati observed his difficulty with the stairs when he was assigned to the Seaford Avenue building.  (Pl.'s Dep. Tr. 160:11-161:11.) However, Plaintiff worked at the Seaford Avenue building sometime prior to his assignment to Lipinski in 2009.

Similarly, the Court is not persuaded that Plaintiff's assignment to shovel snow at Seaman on February 3, 2013, evidences a hostile work environment.  Plaintiff does not dispute that snow

removal was part of his job description, (Pl.'s 56.1 Counterstmt. ¶ 4), and he testified that he did not advise Scarnati or Karolkowski that only one person (who was technically not supposed to shovel snow) was available to assist him, (Pl.'s Dep. Tr. 163:6-14, 167:2-8).

Finally, Plaintiff has not demonstrated that Defendants' conduct altered the terms and conditions of his employment. Plaintiff testified at his deposition that he was "forced" to retire because of his health insurance, not due to the alleged hostile work environment. (Pl.'s Dep. Tr. 202:5-204:21.) Particularly, Plaintiff testified that while he was out on unpaid leave in 2013, he was notified that he would have to pay the full cost of his health insurance. (Pl.'s Dep. Tr. 202:5-20.) Since Plaintiff would only have to pay $156.00 per month for health insurance if he retired--rather than the full cost of $1,500 per month--Plaintiff alleges that he "was forced to retire so [he] could pay for [his] health insurance." (Pl.'s Dep. Tr. 202:24-203:2.) Notably, Plaintiff testified: "I had hoped to go back to work. I had planned on going back to work. I didn't want to retire. The only way I could pay for my health was to retire." (Pl.'s Dep. Tr. 204:17-21.) Moreover, Plaintiff does not dispute that prior to his transfer to Seaman, he intended to work for approximately five additional years. (Pl.'s 56.1 Counterstmt. ¶ 82.)

Accordingly, even drawing all factual inferences in favor of Plaintiff, the Court finds that no reasonable juror could find that the totality of Defendants' conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile work environment.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket Entry 47) is GRANTED.  The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    November   2  , 2016
          Central Islip, New York